OPINION *Page 2 
{¶ 1} Appellant Ginger Carpenter appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her daughter to Appellee Stark County Department of Job and Family Services ("SCDJFS").
 {¶ 2} This case comes to us on the accelerated calendar. App. R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 3} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 4} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF THE FACTS AND CASE {¶ 5} The relevant facts leading to this appeal are as follows.
 {¶ 6} Appellant Ginger Carpenter is the mother of Victoria Brunner, born September 28, 2005. Travis Brunner is the father.
 {¶ 7} SCDJFS became involved with Ginger Carpenter in regard to this case on September 30, 2005, when SCDJFS filed a complaint requesting temporary custody and alleging the child was dependent, and or neglected.
 {¶ 8} At the original shelter care hearing scheduled for October 3, 2005, an attorney from SCDJFS, the ongoing case worker, a Friends of Children representative and Appellant appeared. Father did not appear. The hearing was continued to October *Page 3 
4, 2005, and all parties were served in court. Attorney Wayne Graham was appointed as counsel for Appellant.
 {¶ 9} At the emergency shelter care hearing, Appellant appeared with her attorney and stipulated to the court's finding of probable cause and the award of temporary custody to the SCDJFS. Father did not appear at the hearing.
 {¶ 10} Victoria Brunner was placed into the emergency temporary custody of the SCDJFS. The matter was set for pre-trial on October 26, 2005. Father personally signed for a certified mail letter notifying him of the hearing on October 26, 2005. Bette Maier from CASA/Friends of Children was appointed Guardian ad Litem for the child on October 12, 2005.
 {¶ 11} On October 26, 2005, Father appeared and requested genetic testing. The hearing was continued to December 21, 2005, to allow for testing to be completed. All parties were served in court with the new hearing date. Genetic testing was completed and Mr. Brunner was found to be the father of Victoria.
 {¶ 12} At the hearing on December 21, 2005, Appellant stipulated to a finding of dependency. Father failed to appear. Evidence as to the Father's interest was presented. As a result of that finding, the minor child, Victoria, was found dependent on December 21, 2005, and was placed in the temporary custody of Stark County Department of Job and Family Services and a case plan was adopted.
 {¶ 13} In the instant case, Appellant had three objectives in her case plan. (T. at 7-9). The elements of the case plan applicable to Appellant at the time of the permanent custody hearing were (1) complete a drug and alcohol assessment at Quest with urine *Page 4 
screening; (2) follow prior recommendations for counseling; and (3) maintain housing and employment. (T. at 7-9).
 {¶ 14} On April 14, 2006, Appellant, through her attorney, filed a motion for the return of the child or, in the alternative, an increase in visitation. A hearing on the motion was scheduled for May 15, 2006.
 {¶ 15} At the hearing, the magistrate initially indicated that Appellant did not appear. However, further review of the decision indicates that at some point Appellant was involved in the hearing. Her motion was overruled, but Appellant and the caseworker established a visitation schedule.
 {¶ 16} On August 29, 2006, the SCDJFS filed a Motion for Permanent Custody. Service was perfected on all parties. The Motion for Permanent Custody contained an explanation of the parents' rights and the possible results of this proceeding. SCDJFS included in the case plan a specific plan of the agency's action to seek an adoptive family for the child and to prepare the child for adoption, as required by R.C. § 2151.413(D) of the Revised Code.
 {¶ 17} On November 17, 2006, the trial court filed its Judgment Entry and written Findings of Fact and Conclusions of Law terminating Ginger Carpenter's parental rights and granting permanent custody of Victoria Brunner to SCDJFS.
 {¶ 18} Appellant timely filed a notice of appeal and herein raises the following Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 19} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A *Page 5 
REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE
 {¶ 20} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 21} "III. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PUT FORTH GOOD FAITH AND DILIGENT EFFORTS TO REHABILITATE THE FAMILY SITUATION."
 I., III. {¶ 22} In her First Assignment of Error, Appellant argues that the trial court's decision finding that the minor child could not be placed with Appellant within a reasonable time was against the manifest weight and sufficiency of the evidence.
 {¶ 23} In her Third Assignment of Error, Appellant argues the trial court erred in determining the agency put forth good faith and diligent efforts to rehabilitate the family situation.
 {¶ 24} Because these assignments of error are interrelated, we shall address them together, as did Appellee in its brief.
 {¶ 25} Revised Code § 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 26} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing *Page 6 
held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 27} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 28} "(b) The child is abandoned.
 {¶ 29} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 30} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 31} Ohio's present statutory scheme requires a court, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions *Page 7 
causing the child to be placed outside the child's home." See R.C.2151.414(E)(1); In re Bender, Stark App. No. 2004CA00015, 2004-Ohio-2268.
 {¶ 32} In the case sub judice, the trial court found that the minor child cannot or should not be placed with either parent within a reasonable time.
 {¶ 33} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. § 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. § 2151.414(E), which includes:
 {¶ 34} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 35} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to *Page 8 
division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;"
 {¶ 36} At trial, the court heard testimony that Appellant had completed a parenting evaluation in June, 2005 as a requirement in a prior case. (T. at 8). That evaluation stated that Appellant presented with a "long history of dependent functioning in relationships that are often abusive" and recommended that the agency proceed with permanency planning for that child as well as the child who is the subject of this case. Id. The evaluation also recommended that Appellant seek counseling to help her with her continued dependency on abusive men. (T. at 9). The trial court also heard testimony that Appellant did not feel as though she needed counseling and therefore did not attend counseling under this case plan. (T. at 8). She refused to even acknowledge that prior counseling she received was for the purpose of mental health treatment. (T. at 18).
 {¶ 37} At the time of the trial, Appellant was without permanent housing and was residing in a domestic violence shelter. (T. at 8). She was living in the shelter because she was being stalked, harassed and threatened by a former boyfriend. (T. at 18). She had been employed through a work-study program at Stark State but was terminated after her grades dropped. (T. at 8). She had obtained new employment only a month before the trial.
 {¶ 38} The SCDJFS caseworker testified that she had assisted Appellant in completing her case plan objectives by providing her with bus passes and attempting to maintain regular contact with her. (T. at 11). She explained that Appellant had no consistent contact information. She had several different phone numbers throughout the *Page 9 
case. Messages left for Appellant with her grandmother were not always passed along. Id.
 {¶ 39} The caseworker further testified that despite the efforts made by the agency to identify services for Appellant and aid her in completing those services, Appellant did not substantially comply with her case plan. (T. at 12). Appellant's employment and housing have been sporadic and she has continued to engage in relationships with abusive men, including one who was stalking her at the time of trial. Id. She has failed to reduce any potential risk to the child despite having engaged in services in both this case and a prior case involving another child.
 {¶ 40} Dr. Robin Tener testified that she met with Appellant to complete a parenting evaluation in April, 2005. (T. at 30). Dr. Tener testified that Appellant tested within the lower extreme range of intellectual ability, specifically that she tested within the bottom 1% of the population. (T. at 31). Dr. Tener further testified that persons who score within this level of intellectual ability have a great deal of difficulty parenting in that they have difficulty learning, retaining and applying parenting instruction. (T. at 31). Dr. Tener stated that after assessing Appellant, she had several concerns about Appellant's ability to parent. (T. at 35). She found Mother to be vulnerable, dependent on the abusive men she formed relationships with, and without the intellectual capacity to understand that she is in an abusive relationship until the abuse had become significant. Id. On cross examination, Dr. Tener described Appellant as "a person who does not have some basic intellectual ability and also has dependent features, very strongly dependent, even masochistic". (T. at 41). Dr. Tener testified she believed that someone with Appellant's intellectual capacity coupled with "very, very chronic abuse" would have *Page 10 
a difficult time succeeding because they are unable to learn from their past problems to prevent those problems from repeating in the future. (T. at 42).
 {¶ 41} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.
 {¶ 42} Based on the foregoing, we find the trial court's conclusions pursuant to R.C. § 2151.414(B) as to appellant, are supported by the weight and sufficiency of the evidence. Appellant's First and Third Assignments of Error are overruled
 II. {¶ 43} In her Second Assignment of Error, appellant argues the trial court erred in concluding that a grant of permanent custody to SCDJFS was in the minor child's best interest. We disagree.
 {¶ 44} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 45} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 46} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 47} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private *Page 11 
child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 48} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 49} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 50} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 51} The record in the case sub judice reveals that Appellant's visitation was sporadic. (T. at 52). According to Cheri Vandeborne, the SCDJFS ongoing services worker, the minor child in this case was removed from Appellant's custody immediately after her birth and has not bonded with Appellant. The minor child is currently placed in a foster home with her biological half-brother. (T. at 50). The minor child is closely bonded with her foster family and her biological half-brother. (T. at 51). The foster family is interested in adopting her. (T. at 50).
 {¶ 52} Additionally, the guardian ad litem was present at the custody hearing. The GAL timely submitted a written report to the trial court recommending that the motion for permanent custody be granted to the Agency. *Page 12 
 {¶ 53} For the above reasons and those set forth in the preceding assignment of error, we conclude the trial court's grant of permanent custody of Victoria to SCDJFS was made in the consideration of the child's best interests and did not constitute an error or an abuse of discretion.
 {¶ 54} Appellant's Second Assignment of Error is overruled.
 {¶ 55} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
By: Wise, J. Gwin, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1